Filed 5/8/14  Cardenas v. Alcantar CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| KARLA RIVERA CARDENAS, | C071984 |
| Appellant, | (Super. Ct. No. CVFL121260) |
| v. | |
| GUILLERMO FLORES ALCANTAR, | |
| Respondent. | |

This appeal arises out of the trial court's denial of a petition filed by plaintiff Karla Rivera Cardenas (mother) under the Hague Convention on the Civil Aspects of International Child Abduction (The Hague Convention or the Convention) for the return of her three-year-old son Leosandro from Sutter County to Mexico.  In the United States, the Convention is implemented by the International Child Abduction Remedies Act (Act) (42 U.S.C. § 11601 et seq.; see *Mozes v. Mozes* (9th Cir. 2001) 239 F.3d 1067, 1069 (*Mozes*).)

1

The trial court found that mother, as the petitioner party, failed to show that the boy had been removed by father from his country of "habitual residence" -- i.e., Mexico -- by defendant Guillermo Flores Alcantar (father), and denied mother's petition. Having concluded that mother failed to sustain her burden to establish that Leosandro's habitual residence was Mexico, the court also expressly declined to make any finding or determination of Leosandro's country of habitual residence.

On appeal, mother contends the trial court abused its discretion in refusing to determine whether Mexico or California was Leosandro's habitual residence. She also contends the evidence does not support an implied finding that California was Leosandro's habitual residence at the time he was taken from Mexico, nor does it support an implied finding that Leosandro was taken from Mexico with mother's permission.

Because we find that mother did not meet her burden of proving that Leosandro's habitual residence is in Mexico and because nothing in the trial court's ruling implies that Leosandro is a habitual resident of California or that Leosandro was taken from Mexico with mother's permission, we affirm the judgment.

FACTS AND PROCEEDINGS

Father and mother were married in June 2008 in Mazatlan, Sinaloa, Mexico. Father is a Mexican-born citizen of the United States; mother is a citizen of Mexico and has a permit allowing her to work in the United States. Although we include this information for the sake of clarity, we note that "[t]he spirit of the Convention is to minimize nationality or citizenship as a factor in determining whether a child should be returned to one country or remain in another[, . . . and] courts should abstain from allowing considerations of citizenship or nationality to affect determinations of habitual residence." (J. Garbolino, International Child Custody Cases: Handling Hague Convention Cases in U.S. Courts (3d ed. 2000) § 4.4, p. 94.)

After their marriage, the parties lived together in Sutter County for about six months. Mother, pregnant with Leosandro, returned to Mexico and Leosandro was born there in May 2009. Leosandro was both registered as a Mexican citizen living in Mazatlan and as the child of an American born abroad.

For the first 10 months of his life, Leosandro lived with both parents in Mazatlan. The three then moved together to Woodland, California, and lived there for eight months, through November 2010. The family then returned to Mazatlan and lived there for nine months, until August 2011.

In August 2011, with mother's written permission, father took Leosandro to Robbins, in Sutter County. Mother's written authorization, good for a period of 182 days (six months), states that Leosandro may leave the country, on vacations, accompanied by his father.

Mother alleges that, one month later, in September 2011, the parties separated as husband and wife.

In mid-January 2012, within the six-month window of travel authorized by mother, father and Leosandro returned from Sutter County to Mazatlan. Father hoped to fix his differences with mother. He found an apartment, contacted mother, and delivered Leosandro to mother; mother and Leosandro took a vacation. When they returned, father and mother met to discuss divorce terms, but they could not reach an agreement as to custody of Leosandro. The child was with them at the meeting, and father took Leosandro back to his apartment. Father alleges the parties separated around this time.

A day or two later, on February 2, father decided to take Leosandro back to California. He did not tell mother of his plans, and he did not contact mother for a month.

Father returned with Leosandro to Sutter County, where father's brother and mother also live, and initiated marital dissolution proceedings. In the dissolution proceedings, father seeks sole legal and physical custody of Leosandro.

A few months later, mother filed the instant petition under the Hague Convention for the return of Leosandro to Mexico. As pertinent to this appeal, mother's petition asserted that, under Mexican law, mother had a right to custody of Leosandro and, because Leosandro was born in Mexico and resided in Mexico prior to being removed by father to the United States, Leosandro was a habitual resident of Mexico. Indeed, mother alleged, the parties had also agreed at some point in the past that all three would make their home in Mexico and mother exercised custody over and cared for Leosandro his entire life prior to his removal by father. Elsewhere in her petition, mother admitted that when father went to the United States for work, he would take Leosandro with him for "the specific purpose of promoting family bonding[.]" Finally, mother alleged, father and father's mother (Leosandro's grandmother, Hermelinda Flores) came to mother's home and took Leosandro from her by stealth. When mother protested, father reacted by violently throwing mother to the ground.

The trial court here conducted an ex parte hearing on mother's petition, and set the matter for further hearing. It issued an order to show cause regarding child custody and visitation and, at the hearing on its order, took judicial notice of father's dissolution petition and heard testimony from both parties. Father also filed a declaration in response to the petition (which is not in the record on appeal).

The evidentiary hearing on mother's petition was not reported, but a settled statement later certified by the trial court summarized the testimony of the three witnesses: father, mother, and Flores.

According to the settled statement, mother testified that the parties agreed in August 2011 that father could take Leosandro to California. After father and Leosandro returned to Mexico in mid-January 2012, Leosandro lived with mother for two weeks. On February 2, father and Flores came "unexpectedly" to mother's home and, while mother was briefly in another room, Flores took Leosandro from the house. When mother tried to pursue them, father pushed her, threw her to the wall, and she fell to the

4

ground.  Mother delayed reporting the event to police for nearly a month, because she thought father would bring Leosandro back to her.

Father testified he asked mother to sign the August 2011 authorization allowing him to take Leosandro to California because he believed he would need it to take the child out of Mexico.  They had discussed Leosandro staying with father in California while mother had training in Mexico for three months.  After he returned, the parties met to discuss their divorce; the child was with them.  At the end of the meeting, mother asked father to "take care of the child for her," so father took Leosandro back to father's apartment.  A day or so later, he decided to take the child back to California.

Flores testified she lives in Sutter County.  Father spoke with Flores about wanting to raise Leosandro in the United States.  Flores traveled to Mexico with father and Leosandro in January 2012.  After mother dropped Leosandro off at father's apartment, they (father, Leosandro, and Flores) left for California.

The trial court denied mother's petition.  Its written findings and order after hearing state:  "The court finds that there have been varying versions of the events offered by the various witnesses as it relates to the removal of the child from Mexico.  [¶] . . . [¶]  The court finds that Petitioner's testimony was not credible.  [¶] . . . [¶]  The court finds that the moving party, Petitioner, has not met the burden of proof by a preponderance of the evidence and therefore the burden to prove habitual residence has not been met.  Inasmuch as the burden has not been met, the court declines to make a finding or order as to the child's country of habitual residence."  Beneath this, the judge handwrote:  "Court finds the moving party is required to prove by a preponderance of evidence that the child was removed or retained from the place of habitual residence. The moving party did not [meet] this burden."

DISCUSSION

I

*Legal Principals and the Standard of Review*

The Hague Convention is designed to secure "international cooperation regarding the return of a child wrongfully taken by a parent from one country to another . . . ." (*Mendoza v. Miranda* (C.D. Cal. 2007) 525 F.Supp.2d 1182, 1189; see *Mozes*, *supra*, 239 F.3d at p. 1069; see also *Abbott v. Abbott* (2010) 560 U.S. 1 [176 L.Ed.2d 789].) Both the United States and Mexico are parties to the Convention. (*Bardales v. Duarte* (2010) 181 Cal.App.4th 1262, 1270, fn. 7.)

Under the Convention, a person claiming a child has been wrongfully removed or retained may file a petition in an appropriate court where the child is located requesting the child's return. (42 U.S.C. § 11603(b); *Bardales v. Duarte, supra,* 181 Cal.App.4th at p. 1270.) State and federal courts have concurrent jurisdiction over actions arising under the Convention. (42 U.S.C. § 11603(a), (d); *Chafin v. Chafin* (2013) __ U.S. __ [185 L.Ed.2d 1, 8-9]. )

"The Hague Convention seeks to deter parents from abducting their children across national borders by limiting the main incentive for international abduction—the forum shopping of custody disputes. [Citation.] A court that receives a petition under the Hague Convention may *not* resolve the question of who, as between the parents, is best suited to have custody of the child. [Citation.] With a few narrow exceptions, the court must return the abducted child to its country of habitual residence so that the courts of that country can determine custody." (Italics added; *Cuellar v. Joyce* (9th Cir. 2010) 596 F.3d 505, 508.)

The retention of a child is "wrongful" under Article 3 of the Convention where:

"a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

"b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." (*Mozes*, *supra*, 239 F.3d at p. 1070.)

Title 42 United States Code section 11603, subdivision (e)(1) provides in pertinent part:

"A petitioner . . . shall establish by a preponderance of the evidence--

"(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention."

Therefore, it is the petitioner's burden to establish a "wrongful" removal or rentention by a preponderance of the evidence. (*In re Marriage of Forrest and Eaddy* (2006) 144 Cal.App.4th 1202, 1211.)

"Thus, in order to prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." (*Gitter v. Gitter* (2nd Cir. 2005) 396 F.3d 124, 130-131; accord, *Mota v. Rivera Castillo* (2nd Cir. 2012) 692 F.3d 108, 112; *Friedrich v. Friedrich* (6th Cir. 1993) 983 F.2d 1396, 1400.)

II

*The Petition at Issue*

Here, mother's petition alleged she was entitled to the return of Leosandro because Leosandro's habitual residence was in Mexico immediately before father removed Leosandro to the United States on February 2, 2012; mother had a right to custody of

7

Leosandro under Mexican law; and mother was exercising her custodial rights at the time of the removal.

The trial court concluded that mother had failed to prove by a preponderance of the evidence that Mexico was Leosandro's habitual residence. Specifically, the trial court ordered:

"a. the court finds that there have been varying versions of the events offered by the various witnesses as it relates to the removal of the child from Mexico.

"b. The court finds that Petitioner's testimony was not credible.

"c. The court finds that the moving party, Petitioner has not met the burden of proof by a preponderance of the evidence and therefore the burden to prove habitual residence has not been met. Inasmuch as the burden has not been met, the court declines to make a finding or order as to the child's country of habitual residence."

Below these orders, the trial court wrote in longhand, "Court finds the moving party is required to prove by a preponderance of evidence that the child was removed or retained from the place of habitual residence. The moving party did not [meet] this burden."

As earlier noted, mother contends that the court erred in not determining whether Mexico or the United States was the place of the child's habitual residence and that the trial court was required to do so.

In support of her argument, mother points to the critical nature of the determination of the place of the child's habitual residence, relying heavily on the Ninth Circuit's holding in *Mozes* where the court said, "A court applying [the Article 3 provisions] must . . . answer a series of four questions: (1) When did the removal or retention take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights?" (*Mozes, supra,* 239 F.3d at p. 1070.)

8

We appreciate the critical nature of the finding of habitual residence.  As can be seen from the *Mozes* court's discussion, a court cannot answer the question of whether the removal or retention breached rights of custody except against the backdrop of the laws of the place of habitual residence.

But mother gleans from this a requirement that under a Hague Convention petition the court must, in all circumstances, make a finding of the child's habitual residence irrespective of the statutory burden of proof mandated by 42 U.S.C. section 11603(e)(1).  Mother does not acknowledge the provisions of section 11603(e)(1) except to agree that mother had the burden of establishing that Leosandro's taking was wrongful.  Mother makes no argument as to why the statute must, for some reason, be ignored.

We note that in *Mozes* and in the other cases cited to us, that the trial court had made a finding of habitual residence during the trial proceedings and the issue on appeal was whether that finding was supported by the evidence.  No case has been cited to us, nor are we aware of any, that supports a conclusion that the trial court is required to make a finding of habitual evidence without regard to petitioner's burden to prove the allegations necessary to the petition by a preponderance of the evidence.

We further note that mother has not argued here that the court erred because the evidence was sufficient to compel a finding that Mexico was Leosandro's habitual residence.  We have not been asked to decide that question.

Mother also argues that the trial court was required to make a finding that Leosandro was a habitual resident of Mexico or of California because to do otherwise implies that he is a habitual resident of California and that his taking by his father was with mother's permission.

Citing *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42 (*Fladeboe*), mother enlists the doctrine of implied findings to support her argument that the court's ruling implied that California was Leosandro's place of habitual residence and

9

that his taking was with mother's permission. Mother's reliance on the doctrine of implied findings is misplaced.

"The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]" (*Fladeboe, supra,* at p. 58.)

Mother cites the doctrine for other than what it is and asks us to infer, not those findings necessary *to support the judgment*, but instead "findings" outside the judgment. That is not the function of the doctrine of implied findings.

While the trial court's order could have been clearer, explaining for instance the testimony that it did not find credible, we cannot read such "implied" findings into the trial court's ruling. That ruling was straightforward, at least on the question of habitual residence: mother's evidence was insufficient to carry her burden of proving by a preponderance of the evidence that Leosandro's habitual residence was in Mexico. There is no finding there, implied or otherwise, that Leosandro's habitual residence is California or that mother gave Leosandro's father permission to take him to the United States. We recognize that in this case, and no doubt in the great majority of cases, the dispute lies between only two possible places of habitual residence. But the finding that petitioner has not proven one of the two does not constitute a finding that the child is a habitual resident of the other.

Mother's proof on the petition having failed, the trial court made no error in denying her petition.

DISPOSITION

The order denying mother's Hague Convention petition is affirmed.  Father is awarded his costs on appeal.  (California Rules of Court, rule 8.278 subdivision (a)(2).)


        HULL        , Acting P. J.


We concur:


      DUARTE      , J.


      HOCH      , J.